[Cite as *State v. Young*, 2022-Ohio-3132.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

        Plaintiff-Appellee/
        Cross-Appellant,        :

                                    No. 110973

        v.                              :

KIARAN YOUNG,                          :

        Defendant-Appellant/
        Cross-Appellee.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** September 8, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-624427-B

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Kerry A. Sowul, Gregory Ochocki, and Ryan Bokoch, Assistant Prosecuting Attorneys, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Aaron T. Baker, Assistant Public Defender, *for appellant*.

FRANK DANIEL CELEBREZZE, III, P.J.:

{¶ 1} Appellant Kiaran Young ("appellant") appeals his convictions and sentencing by the Cuyahoga County Court of Common Pleas. After a thorough

review of the applicable law and facts, we affirm appellant's convictions but remand the case to the trial court to recalculate appellant's jail-time credit.

## I. Factual and Procedural History

{¶ 2} This appeal arises from a series of crimes committed by appellant and four codefendants in October and November 2016.

{¶ 3} The first incident occurred on October 12, 2016, and involved the theft of a motor vehicle. Orokya Ouedrago was stopped for gas at a Shell gas station on the corner of Lee and Harvard Roads. She went inside the station to pay and left her keys inside her 2014 black Ford Focus. When she returned to the vehicle, she saw a light-skinned black male with dreadlocks enter and drive away in her vehicle.

{¶ 4} Ms. Ouedrago reported the car as stolen to Cleveland police and later identified appellant from a photo lineup. Her vehicle was recovered, and clothing in the vehicle contained appellant's DNA.

{¶ 5} The next incident involved a carjacking, which occurred on October 31, 2016. Shavanna Wesley was driving to the Walmart at the Steelyard Commons and was traveling down Miles Road. At the time, she was driving a 2016 silver Ford Escape, which was a rental car. As she was driving, a car, which she described as smaller, "like a Ford or something," which may have been black, bumped her vehicle from behind. She got out to observe the damage, leaving the keys in the vehicle and the Ford Escape running.

{¶ 6} Wesley testified that appellant was the driver of the vehicle that hit her, and a second, darker skinned man got out and put a gun to her face and said, "I need that." The man then got into her Ford Escape, and both vehicles drove away.

{¶ 7} She walked to a nearby convenience store and called the police from her cell phone. Ms. Wesley's vehicle was recovered a week later. The license plates from the rental company had been replaced with plates registered to appellant's grandmother.

{¶ 8} Ms. Wesley was unable to identify appellant from photo arrays provided to her by detectives. However, during her testimony, she was asked if she saw the driver of the vehicle that hit her in the courtroom. She stated that she did and described what he was wearing — a black shirt, blue mask, and dreads. When questioned on cross-examination about her inability to initially identify appellant in the photo array, Ms. Wesley stated that she was shaken up in the days following the incident, but the event has replayed in her head in the five years since.

{¶ 9} The next incident also occurred on October 31, 2016, in the afternoon, and involved a shooting. Deandre Veal, Kyara Graves, their two young children, D.V. and K.V., and Kyara's cousin, Javon Graves, were driving on Harvard Road when they passed a black Ford Focus that was stopped in the street. The Focus began following them slowly. Mr. Veal drove to the Shell gas station at the intersection of Lee and Harvard Roads and parked to see if he was being followed. The black Focus pulled in behind them.

{¶ 10} Mr. Graves exited the vehicle and went into the store of the gas station. Mr. Veal observed a man, with long dreadlocks and a tattoo on his cheek, exit the Focus's passenger side and cross the street. The individual then retrieved a handgun from the bus stop across the street and returned to the Focus.

{¶ 11} Mr. Veal got Mr. Graves back into the car and tried to leave the gas station parking lot and lose the Focus in traffic. Both cars came to a stop light, and the occupants of the Focus brandished guns and told Mr. Veal to pull over to a side street. The occupants of the vehicle included the driver, the man with dreadlocks that Mr. Veal saw retrieving the firearm, and a man in a clown mask sitting in the back seat.

{¶ 12} Ms. Graves told them that they would not pull over and that there were kids in the car. Mr. Veal heard someone say something about "purging," which he understood to be a reference to the movie.[1] As Mr. Veal began to speed away, the driver began shooting at his car. Five shots rang out before the Focus turned onto a side street. Mr. Graves and K.V., who was only 19 months old, had both been shot. K.V. had been shot in the shoulder, and Mr. Graves was shot in the chest.

{¶ 13} Mr. Veal met with police at the hospital and later met with detectives, who administered a photo array. Mr. Veal identified appellant with 75 percent certainty as the man with dreadlocks who retrieved the firearm. Ms. Graves identified appellant with 90 percent certainty.

---

[1] *The Purge* is a 2013 horror movie where all crime, including murder, is temporarily legal during the night of the annual Purge.

{¶ 14} The next incident occurred on November 2, 2016. Garfield Heights Police Officer Patrick Monnolly observed a silver Ford Escape (later identified as the vehicle stolen from Ms. Wesley) with a Maryland license plate. He ran the plate, which came up as stolen; he then notified dispatch. Later that day, he again observed the silver Escape and began to follow it. The silver Escape was driving together with a black Ford Focus (later identified as the one stolen from Ms. Ouedrago). Ofc. Monnolly activated his lights and siren and began to pursue the Escape.

{¶ 15} The Focus and the Escape both attempted to evade Ofc. Monnolly. After a short pursuit, the Focus crashed into another vehicle. Ofc. Monnolly saw the driver of the Focus, a black male with dreadlocks, get into the Escape and flee the scene.

{¶ 16} The Focus was towed from the scene, and police retrieved evidence from the vehicle, including two cell phones, two handgun magazines, a box of shotgun shells, and clothing. DNA on the clothing matched that of appellant.

{¶ 17} The next incident occurred on November 2, 2016, and involved another carjacking. Curtis Davis left his house to play the lottery. His daughter, Ciara Ware, heard tires screeching in the parking lot adjacent to her father's house. Davis then came to the house and told her that he had been robbed. Mr. Davis's black Ford Escape had been stolen from him.

{¶ 18} The two called the police. Detectives later administered a photo array, and Davis identified the robber as appellant's codefendant, William Cannon, with 45-50 percent certainty.

{¶ 19} On November 8, 2016, B.S., who was a minor at the time of the incident, was walking to pick up his paycheck when he saw a black SUV (later identified as Mr. Davis's black Ford Escape) circle him suspiciously in the street. There were three people in the SUV. The Escape then stopped in a driveway ahead of B.S., causing him to walk around the vehicle. When he did, a man with a gun came around from the other side of the Escape and pointed the gun in B.S.'s face. This man was later identified as codefendant Brico Allen ("Allen"). Allen told B.S. to get into the Escape and pushed him in by his shoulder. The SUV was driven by a light-skinned black man with dreadlocks.

{¶ 20} Allen told B.S. to give him everything he had and that he did not want to hurt him. B.S. heard someone in the front of the vehicle suggest taking B.S. to their trap house to murder him. As the SUV drove, the driver turned around and struck B.S. with the handgun he was holding. The men robbed B.S. of his shoes, phone, and hoodie, and then ejected him at gunpoint onto the sidewalk.

{¶ 21} B.S. called his mother and police from a friend's house. When he spoke with police, he stated that he recognized Allen from social media and a news story involving Allen recently stealing a police car. He did not recognize the driver or front passenger.

{¶ 22} B.S. met with detectives several days later and was presented with a photo array. He identified Allen with 75 percent certainty and identified appellant with 50 percent certainty as the light-skinned man with dreadlocks who drove the vehicle. B.S. testified that he was less certain about appellant's identification because he only saw him when appellant turned around to pistol whip him.

{¶ 23} The next incident occurred on November 9, 2016, where Frederick Sims heard gunfire directed toward his vehicle. It was later determined that the shots came from the black Ford Escape, the vehicle stolen from Mr. Davis.

{¶ 24} That same day, officers located the black Ford Escape at a shopping plaza at Lee and Harvard Roads. Officers attempted to pull the vehicle over, driving behind it with lights and sirens activated, but ultimately lost sight of the vehicle. The officers identified the driver of the vehicle as a light-skinned black male with dreads.

{¶ 25} The following day, the black Ford Escape was recovered, and appellant's cell phone was found inside the vehicle.

{¶ 26} Another incident occurred on November 10, 2016. J.F., who was 15 years old at the time of the incident, testified as to events that he reported to police. He had difficulty remembering the incident and was questioned about not wanting to "snitch." He was permitted to utilize the statement he had made to police on the day of the incident.

{¶ 27} On the day in question, J.F. was walking to school when a silver truck pulled up and a dark-skinned male outside the truck had a gun and told him to get

into the truck.  The man took his phone and told him to take off his belt and shoes. He was then dropped off on a different street.

{¶ 28} J.F. stated that the driver was a light-skinned black male with dreads and a cross tattoo under his eye.  He identified appellant from a photo array with 50 percent certainty.

{¶ 29} In the next incident, Deborah Papp heard a loud pounding on her front door on the morning of November 14, 2016.  She did not answer and then heard a similar pounding at her side door.  She ran to her back bedroom to look out the window and see the individual doing the pounding.  She then heard the door being kicked in and yelled that she had called the police and that they were on their way.  She next heard tires screeching.  She saw the individual she had observed leaving in a car and saw others in the car with him.  She described the individual as young, medium to light-skinned black man with dreadlocks.  The police came and she was presented with a photo array; she identified appellant with 100% certainty as the individual who kicked in her door.

{¶ 30} Jazmine Strozier was across the street visiting her grandmother at the time that Ms. Papp's door was kicked in.  She saw two people attempting to break into the house, one with dreadlocks.  She further observed the individuals get into a silver vehicle and drive away.

{¶ 31} The following day, on November 15, 2016, Garfield Heights Police Lieutenant David Bailey responded to reports of two males fleeing from a stolen vehicle.  One of the individuals was thought to be appellant.  Lt. Bailey arrived in his

vehicle at the Garfield Park Reservation and observed appellant and his codefendant William Cannon run out of the park and split up. Lt. Bailey recognized appellant from a photograph posted at the Garfield Heights Police Department. He observed appellant reaching for his waistband and yelled for him to stop. Appellant withdrew a handgun from his waistband and ran into the woods.

{¶ 32} Cleveland Metroparks Patrolman Michael Kort responded to a reported foot chase. He caught up to Lt. Bailey and another officer, who warned him that appellant had run into the woods and had a handgun. Kort, Bailey, and the other officer split up to pursue appellant. Kort spotted appellant who had fallen into a pool of muddy water. Kort shouted at appellant to show his hands, which were beneath the water.

{¶ 33} Appellant eventually complied and officers pulled him out of the mud and took him into custody. At the time of his arrest, appellant was wearing the belt taken from J.F.

{¶ 34} Appellant was interviewed by Detective Phillip Herron at the Garfield Heights police station. Appellant admitted to driving the silver SUV during the robbery of J.F., acknowledged spending time and committing crimes with Allen, Cannon, and an individual named Mike, and admitted to driving the Ford Focus during the police chase on November 2, 2016, and then getting into the silver Ford Escape.

{¶ 35} Appellant and his codefendants were indicted on a total of 113 counts. Appellant was charged in 54 of the 113 counts on charges of engaging in a pattern of

corrupt activity, attempted aggravated murder, aggravated robbery, kidnapping, discharge of a firearm on prohibited premises, felonious assault, conspiracy, burglary, robbery, failure to comply, having weapons while under disability, receiving stolen property, and grand theft of a motor vehicle, along with accompanying firearm specifications.

{¶ 36} Five counts of having weapons while under disability were tried to the court and the rest of the charges were tried to a jury. The state presented the testimony of 42 witnesses and offered evidence including, inter alia, text messages between appellant and his codefendants, Facebook records, photographs, photo arrays, and DNA evidence. At the close of the state's case, appellant moved for a Crim.R. 29 acquittal, which the court denied. Appellant renewed his motion after all evidence had been presented, which was again denied.

{¶ 37} In response to the defense's Crim.R. 29 motion, the state dismissed 12 of the counts. The jury found appellant not guilty of one felonious assault charge and guilty of the remaining counts, including a number of firearm specifications. On the having weapons while under disability charges, the court found appellant not guilty of three charges and guilty of two.

{¶ 38} The court imposed an aggregate prison sentence of 36 years. At the sentencing hearing, appellant was also sentenced on two other cases, Cuyahoga C.P. Nos. CR-16-605516 and CR-16-606749. The court ordered the sentence in this matter to run concurrent with the sentences imposed in the other two cases, as well as with the prison sentence that appellant was already serving for another unrelated

case, Cuyahoga C.P. No. CR-16-611642. The court granted appellant 1,794 days of jail-time credit based upon the time he had already served on CR-16-611642.

{¶ 39} Appellant appealed, raising nine assignments of error for our review:

1. The trial court erred by failing to grant a judgment of acquittal pursuant to Crim.R. 29(A) on various charges in the indictment, and thereafter entering a judgment of conviction of those offenses which were not supported by sufficient evidence, in derogation of appellant's right to due process of law, as protected by the Fourteenth Amendment to the United States Constitution, as well as section 16 of the Ohio Constitution.

2. The trial court erred by entering judgments of conviction as to the various counts of the indictment that were against the manifest weight of the evidence, in derogation of Mr. Young's right to due process of law, as protected by the Fourteenth Amendment to the United States Constitution.

3. The trial court abused its discretion and/or committed plain error, in violation of Mr. Young's due process right to a fair trial, when it ruled admissible the in-court identification of Mr. Young by Shavanna Wesley when she showed no prior ability to identify Mr. Young in an out-of-court photo lineup a few days after the incident in question.

4. The trial court abused its discretion and/or committed plain error, in violation of Mr. Young's due process right to a fair trial and the confrontation clause, when it admitted the Facebook records, contained in various exhibits numbered 225 through 256, which were both hearsay and not authentic.

5. Trial counsel for Mr. Young provided ineffective assistance of counsel, as guaranteed by both the United States Constitution, and the Ohio Constitution, when he failed to challenge via suppression the various out-of-court identifications of Mr. Young as impermissibly suggestive, failed to object to the in-court identification of Mr. Young by Shavanna Wesley, and failed to object to the Facebook records contained in various exhibits numbered 225 through 256.

6. The trial court erred, in violation of Mr. Young's due process right to a fair trial, when it abused its discretion in admitting irrelevant testimony by Kyara Graves, indicating that she had been intimidated by an unknown individual in the courthouse.

7. The trial court abused its discretion, in violation of Mr. Young's due process right to a fair trial, by admitting out of court statements by J.F., in violation of the hearsay rule.

8. The trial court erred and/or committed plain error, in violation of Mr. Young's due process right to a fair trial, when it refused to grant the motion to withdraw and the motion to dismiss counsel, thus forcing trial counsel to defend Mr. Young when Mr. Young had an ethical grievance pending against trial counsel.

9. The cumulative effect of multiple errors at trial, even if singularly not sufficient to warrant reversal, together deprived appellant of a fair trial and a denial of due process.

{¶ 40} The state cross-appealed, assigning one error for our review:

1. The trial court erred when it granted defendant-appellant jail-time credit for the time he was serving a prison sentence on an unrelated offense.

## II. Law and Analysis

### A. Appellant's Appeal

### 1. Sufficiency of the Evidence

{¶ 41} In his first assignment of error, appellant argues that his convictions were not supported by sufficient evidence. Where a party challenges the sufficiency of the evidence supporting a conviction, a determination of whether the state has met its burden of production at trial is conducted. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). An appellate court reviewing sufficiency of the evidence must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104

Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. With a sufficiency inquiry, an appellate court does not review whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins* at 387. A sufficiency of the evidence argument is not a factual determination, but a question of law. *Id.*

{¶ 42} Appellant does not dispute that any of the crimes in question occurred, but he argues that there was insufficient evidence of his identity. He argues that the state failed to prove beyond a reasonable doubt his identity as the person who actually committed the crimes in question. Specifically, appellant raises the following identification issues:

> ** Ms. Ouedrago — made an out-of-court identification of appellant but did not testify that the person identified in the photo lineup was the same person on trial in the courtroom.
>
> ** Ms. Wesley — was unable to identify appellant in a photo lineup but was able to identify an individual in the courtroom as the driver she believed to be involved. The record does not reflect that she identified appellant.
>
> ** Mr. Veal — testified that he saw a chubby man that was 5'8" or 5'9" with a face tattoo and made an out-of-court photo identification of Kiaran Young with 75% certainty. He did not make an in-court identification.
>
> ** Ms. Graves — made an out-of-court identification of Kiaran Young with 90% certainty. She was unable to make an in-court identification.
>
> ** Mr. Graves — never identified appellant.

** Appellant was never identified as the driver of the Ford Focus.

** B.S. — was only 50% certain of his out-of-court identification of Kiaran Young; further there was no testimony that the Kiaran Young in the lineup was appellant.

** Officer Farren — testified that Kiaran Young was driving the black Escape. He also identified that an individual in the courtroom was the driver, but the record does not reflect that the individual he identified was appellant.

** J.F. — was only 50% certain of his out-of-court photo identification of Kiaran Young. No one identified appellant in the courtroom as being the person in the photo lineup or involved in the incident with J.F.

** Debbie Papp — identified Kiaran Young from a photo lineup with 100% certainty, but made no in-court identification.

** Some of the individuals depicted in the photo arrays did not match the description of the perpetrator.

{¶ 43} Appellant contends that while in-court identifications were made of an individual in the courtroom, the record does not reflect that the individual was appellant. In addition, where an out-of-court photo identification was made, the witnesses did not state that the individual in the photo was appellant in the courtroom. Moreover, appellant was wearing a mask over his face during the courtroom proceedings pursuant to the court's administrative order regarding the COVID-19 pandemic and was never asked to remove his mask.

{¶ 44} The state argues that appellant admitted that he was driving the stolen Ford Focus when he fled from police and crashed the car and escaped in the stolen Ford Escape. In addition, appellant admitted that the iPhone recovered from the

black Ford Escape was his and admitted that he drove and aided in the robbery of J.F.

{¶ 45} Appellant was identified by Ms. Ouedrago, Ms. Wesley, Ms. Graves, J.F., B.S., and Ms. Papp. While the state did not ask for the record to reflect that appellant had been identified by the witnesses, the jury was present in the courtroom and was able to see the individual that the witnesses had described. In addition, the photo arrays were admitted into evidence.

{¶ 46} Moreover, photos from appellant's phone and Facebook account show that he was in the stolen Ford Focus with his codefendants, brandishing firearms. There was additional evidence where appellant was seen and identified as driving the black Ford Focus, and some of his property, including his underwear that contained his DNA, was recovered from the Focus.

{¶ 47} When analyzing a claim of sufficiency of the evidence, a reviewing court is neither permitted to assess the credibility of witnesses nor otherwise weigh the evidence. *In re A.W.*, 8th Dist. Cuyahoga No. 103269, 2016-Ohio-7297, ¶ 33. "The resolution of conflicting testimony and the credibility of the witnesses remains within the province of the trier of fact." *Id.*, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶ 48} We find that there was sufficient evidence to support appellant's convictions, and appellant's first assignment of error is overruled.

## 2. Manifest Weight of the Evidence

{¶ 49} In his second assignment of error, appellant argues that his convictions were against the manifest weight of the evidence.

{¶ 50} A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reversal on the basis that a verdict is against the manifest weight of the evidence is granted "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶ 51} Although appellant raises separate assignments of error challenging the sufficiency and manifest weight of the evidence, appellant does not develop an argument in support of his manifest weight challenge with citations to the record and supporting authorities, as required by App.R. 16(A)(7). Rather, appellant merely references the arguments raised in his first assignment of error. *See Cleveland v. Hall*, 8th Dist. Cuyahoga No. 101820, 2015-Ohio-2698, ¶ 14, citing App.R. 16(A)(7) (overruling appellant's assignment of error relating to a sufficiency challenge pursuant to App.R. 16(A)(7) because the appellant did not make a specific argument regarding why the convictions were not supported by sufficient evidence, and only addressed the issues relating to the manifest weight challenge).

"Sufficiency" and "manifest weight" challenges present two distinct legal concepts. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 23.

{¶ 52} App.R. 16(A) requires a party to separately argue each assignment of error. Pursuant to App.R. 12(A)(2), an appellate court may disregard any assignment of error, or portion thereof, if the appellant fails to make a separate argument. *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 55. Accordingly, appellant's second assignment of error is overruled.

### 3. In-Court Identification by Shavanna Wesley

{¶ 53} In his third assignment of error, appellant argues that the trial court abused its discretion or plainly erred by allowing the in-court identification of appellant by Ms. Wesley when she was unable to identify him in an out-of-court photo lineup several days after the incident in question.

{¶ 54} A trial court has broad discretion to admit or exclude evidence. *State v. Thompson,* 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 111. An admissibility ruling will not be reversed unless there has been an abuse of discretion and the defendant has thereby suffered material prejudice. *Id.*

{¶ 55} "An identification derived from unnecessarily suggestive procedures, which have a likelihood of leading to a misidentification, violates a defendant's right to due process." *State v. Fields*, 8th Dist. Cuyahoga No. 99750, 2014-Ohio-301, ¶ 10, citing *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Generally, an in-court identification will be upheld "where the totality of the circumstances demonstrates that the in-court identification was reliable." *State v. Gales*, 8th Dist.

Cuyahoga No. 102809, 2016-Ohio-588, ¶ 30, citing *State v. Monford*, 190 Ohio App.3d 35, 2010-Ohio-4732, 940 N.E.2d 634, ¶ 58 (10th Dist.).

{¶ 56} This court has held that even if a pretrial identification procedure, such as a photo array or a lineup, was impermissibly suggestive, an in-court identification is permissible if the state establishes by clear and convincing evidence that the witness had a reliable, independent basis for the identification based on prior independent observations made at the scene of the crime. *State v. Thomas*, 8th Dist. Cuyahoga No. 88548, 2007-Ohio-3522, ¶ 20; *State v. Jackson*, 8th Dist. Cuyahoga No. 88345, 2007-Ohio-2925, ¶ 43; *State v. Tate*, 8th Dist. Cuyahoga No. 81577, 2003-Ohio-1835, ¶ 24; *In re Henderson*, 8th Dist. Cuyahoga No. 79716, 2002 Ohio App. LEXIS 452 (Feb. 7, 2002). In *State v. Jackson,* 26 Ohio St.2d 74, 269 N.E.2d 118 (1971), the Supreme Court of Ohio explained that in determining the admissibility of an in-court identification, trial courts should consider whether the in-court identification was a product of an improper pretrial identification procedure or whether the in-court identification "came from some independent recollection and observation of the accused by the witness." *Id.* at 77.

{¶ 57} In analyzing the potential for misidentification, courts consider:

> "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

*State v. Harris*, 8th Dist. Cuyahoga No. 109060, 2021-Ohio-856, ¶ 2, quoting *Biggers* at 199-200. The court must review these factors under the totality of the circumstances. *Id.*

{¶ 58} Here, Ms. Wesley's in-court identification was based on her own observations and memory. She testified under oath and was subject to cross-examination about her identification of appellant. She stated that she originally saw him as the driver of the vehicle behind her. She further testified that after the vehicle behind her bumped her silver Escape, she got out to see if there was damage and again observed appellant as the driver.

{¶ 59} When questioned about her confident in-court identification in light of her prior inability to identify appellant in the days following the incident, Ms. Wesley stated that she was shaken up in the days after the incident, but the event has replayed in her head in the five years since. On cross-examination, appellant's trial counsel asked Ms. Wesley whether it was possible she was "ID-ing [appellant] because he's sitting at the table here today?" She responded, "No." She further denied that anyone she knew had put appellant's name in her head.

{¶ 60} The foregoing evidence, when viewed under the totality of the circumstances, does not indicate that the identification procedure was unduly suggestive or unreliable. Any issues regarding Ms. Wesley's inability to identify appellant days after the incident and make a certain identification five years later while appellant was wearing a mask in the courtroom was an issue of credibility for the jury to determine, and it is apparent that the jury did indeed believe her. *See*

*State v. Dennis*, 10th Dist. Franklin No. 05AP-1290, 2006-Ohio-5777, ¶ 13 (witnesses' trial identifications of defendant, despite prior failures to identify defendant in photo arrays entered into evidence, presented credibility determinations for the jury); *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964) (It is the province of the jury to "believe or disbelieve any witness or accept part of what a witness says and reject the rest.").

{¶ 61} The trial court did not abuse its discretion in allowing the admission of Ms. Wesley's in-court identification of appellant, and the third assignment of error is overruled.

### 4. Admission of Facebook Records

{¶ 62} In his fourth assignment of error, appellant argues that the trial court abused its discretion or plainly erred by admitting Facebook records that were not authentic and constituted hearsay.

{¶ 63} Appellant asserts that Cleveland Police Detective Shane Bauhof testified as to certain Facebook records that the state asserted were from an account connected to appellant. The documents showed photographs of appellant and his associates brandishing firearms, riding in vehicles that fit the descriptions of the ones they were accused of stealing, and holding themselves out to be a gang.

{¶ 64} Appellant contends that there was no testimony as to the authenticity of the records, and Det. Bauhof simply stated that they were pages from a "search warrant result." Appellant maintains that the documents were labeled "business records," but there was no testimony to support this. Additionally, appellant asserts

that the documents implicated the Confrontation Clause because they constituted testimonial statements.

{¶ 65} Appellant acknowledges that his trial counsel did object several times during the testimony in question but concedes that the objections were not based upon his arguments regarding hearsay and the Confrontation Clause. Where a party fails to object to alleged hearsay testimony, we review for plain error. *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 72. Under Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." However, "'[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Mallory*, 8th Dist. Cuyahoga No. 106052, 2018-Ohio-1846, ¶ 17, quoting *State v. Long*, 53 Ohio St.2d 91, 93, 372 N.E.2d 804 (1978), paragraph two of the syllabus. The "extremely high burden" of demonstrating plain error is on the defendant. *State v. Chapman*, 8th Dist. Cuyahoga No. 107375, 2019-Ohio-1452, ¶ 20.

{¶ 66} Pursuant to Evid.R. 901(A), the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Ohio courts have also held that the determination of admissibility and authentication of social media evidence is "based on whether there was sufficient evidence of authenticity for a reasonable jury to conclude that the evidence was

authentic." *State v. Gibson*, 6th Dist. Lucas Nos. L-13-1222 and L-13-1223, 2015-Ohio-1679, ¶ 41.

> The hurdle the proponent of the document must overcome in order to properly authenticate a document is not great. * * * Thus, the purpose behind authentication is to connect the particular piece of evidence sought to be introduced to the facts in the case by giving some indication the evidence is relevant and reliable. The ultimate decision on the weight to be given to that piece of evidence is left to the trier of fact.

*State v. Brown*, 151 Ohio App.3d 36, 2002-Ohio-5207, 783 N.E.2d 539, ¶ 33-35 (7th Dist.).

{¶ 67} In *State v. Inkton*, 2016-Ohio-693, 60 N.E.3d 616, ¶ 72 (8th Dist.), the court admitted appellant's Facebook page into evidence, holding that "[t]here has been testimony sufficient to support, if believed, that it is what it purports to be." In *Inkton*, a detective and a codefendant testified that "there were 'numerous' pictures on appellant's Facebook page and that [they] were able to determine that appellant was in fact that person in the pictures," thus properly authenticating them. *Id.* at ¶ 78. *Compare State v. Gordon*, 2018-Ohio-2292 114 N.E.3d 345, ¶ 71 (8th Dist.) (holding that the state failed to identify a photograph allegedly from "a Facebook page using the name Yonko Boolin" when there was no evidence linking the photograph or the social media account to the defendant, no evidence of who retrieved the photo from Facebook, and no evidence that defendant was one of the people in the photograph).

{¶ 68} In the case at hand, Det. Bauhof testified that he had monitored Facebook accounts related to appellant and his associates. In particular, he

monitored an account in the name of "Bossman Pablo"; he determined that this account was operated by appellant. Det. Bauhof testified that they were being monitored in real time, checking them multiple times per day. Even though they were monitoring the Facebook accounts, the police still obtained a warrant for the actual records from Facebook. Det. Bauhof testified that Detective Lisette Gonzalez obtained the warrant and that he assisted her in reviewing some of the records.

{¶ 69} Upon review, we find that Det. Bauhof testified as to the authenticity of the photograph taken from appellant's Facebook page. There was no evidence that the Facebook page was created by anyone other than appellant, nor was there evidence that the page was fabricated or tampered with. We find that this evidence satisfies the relatively low burden of authentication.

{¶ 70} Appellant further argues that the Facebook records constituted inadmissible hearsay. We disagree.

{¶ 71} Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(D)(2), admission by a party-opponent, provides that a statement is not hearsay if "the statement is offered against a party and is (a) the party's own statement, in either an individual or a representative capacity * * * ."

{¶ 72} In the instant matter, the Facebook records in question were admissible as a statement by a party-opponent. As outlined above, the evidence supports that the account on which the photos were posted belonged to appellant.

Furthermore, the evidence supports that the photos posted on appellant's Facebook page matched photos that were extracted from his cell phone. Thus, we find that the Facebook records did not constitute inadmissible hearsay.

{¶ 73} Finally, appellant's argument regarding the Confrontation Clause is also without merit. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." The Confrontation Clause generally precludes the introduction of testimonial statements at trial. *Crawford v. Washington*, 541 U.S. 36, 68-69, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Although the Supreme Court has not defined what constitutes a "testimonial" statement, it has been held to apply to "'prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and responses to police interrogations.'" *State v. Dixon*, 2016-Ohio-1491, 63 N.E.3d 591, ¶ 45 (4th Dist.), quoting *State v. Mills*, 2d Dist. Montgomery No. 21146, 2006-Ohio-2128, ¶ 17. In *Crawford*, the United States Supreme Court held that "testimonial" hearsay statements may be admitted only where the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness regarding the subject matter of the statements.

{¶ 74} Appellant has not demonstrated how the Facebook records constituted testimonial statements. Accordingly, there was no violation of the Confrontation Clause, and appellant's fourth assignment of error is overruled.

## 5. Ineffective Assistance of Counsel

{¶ 75} In his fifth assignment of error, appellant argues that his counsel was ineffective by failing to challenge the out-of-court identifications of appellant, failing to object to the in-court identification of appellant by Ms. Wesley, and failing to object to the admission of the Facebook records.

{¶ 76} Appellant has the burden of proving ineffective assistance of counsel over a strong presumption that a properly licensed trial counsel rendered adequate assistance. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). In order to demonstrate ineffective counsel, a defendant must show, not only that his counsel's representation was deficient, but also that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at paragraph two of the syllabus; *see also Strickland* at *id.*

{¶ 77} We find no merit to this assignment of error. We determined in our analysis of appellant's third and fourth assignments of error that the trial court did not err in admitting the Facebook records or allowing Ms. Wesley's in-court identification. A defense counsel's failure to object is not ineffective assistance of

counsel if the evidence is admissible. *State v. Jackson*, 8th Dist. Cuyahoga No. 86105, 2006-Ohio-174, ¶ 87. As stated by the Supreme Court of Ohio, "counsel is not deficient for failing to raise a meritless issue." *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, 817 N.E.2d 845, ¶ 117, citing *State v. Taylor*, 78 Ohio St.3d 15, 31, 676 N.E.2d 82 (1997). Accordingly, we do not find appellant's counsel deficient in his performance, and appellant's fifth assignment of error is overruled.

## 6. Admission of Irrelevant Testimony

{¶ 78} In his sixth assignment of error, appellant argues that the trial court abused its discretion in admitting the irrelevant testimony of Ms. Graves, where she stated that she had been intimidated by an unknown individual in the courthouse. Ms. Graves testified that while she was at the courthouse, certain individuals looked at her, sat behind her, and made her uncomfortable. She did not identify the individuals. Appellant asserts that this implication that appellant or individuals associated with him were engaging in witness tampering was highly prejudicial.

{¶ 79} The state argues that the line of questioning was appropriate to determine any effect that the individuals' behavior had had on Ms. Graves's testimony. We agree. "A trial court has broad discretion concerning the admission of evidence." *State v. Harris*, 8th Dist. Cuyahoga No. 102855, 2016-Ohio-391, ¶ 14, citing *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175.

> "The decision whether to admit or exclude evidence is subject to review under an abuse of discretion standard, and absent a clear showing that a trial court abused its discretion in a manner that materially prejudices a party, an appellate court will not disturb an evidentiary ruling. An abuse of discretion connotes more than an error in law or judgment, but instead demonstrates perversity of will, passion, prejudice,

partiality, or moral delinquency. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court."

*Id.*, quoting *Pappas v. Ippolito*, 177 Ohio App.3d 625, 2008-Ohio-3976, 895 N.E.2d 610, ¶ 19 (8th Dist.).

{¶ 80} Testimony that a witness fears reprisal for testifying is admissible because it is relevant to the witness's credibility. *State v. Payne*, 8th Dist. Cuyahoga No. 107825, 2019-Ohio-4158, ¶ 52. "This rule applies equally to third-party intimidation that renders a witness reluctant to testify[.]" *State v. Gibson*, 8th Dist. Cuyahoga No. 103958, 2016-Ohio-7778, ¶ 14, citing *People v. Mendoza*, 52 Cal.4th 1056, 132 Cal.Rptr.3d 808, 263 P.3d 1 (2011) ("Evidence that a witness is afraid to testify or fears retaliation for testifying is relevant to the credibility of that witness and is therefore admissible."). Even though Ms. Graves ultimately stated that the actions of the individuals did not have any effect on her testimony, evidence regarding the circumstances under which she was testifying was relevant, and the trial court did not err.

{¶ 81} Appellant's sixth assignment of error is overruled.

### 7. Hearsay Statements

{¶ 82} In his seventh assignment of error, appellant argues that the trial court abused its discretion by admitting out-of-court statements by J.F., which constituted hearsay.

{¶ 83} Appellant contends that counsel for the state questioned J.F. about events that occurred on November 15, 2016, of which J.F. stated that he had no

recollection.  The state then sought to have J.F. read his prior written statement to police into the record.  Defense counsel objected, but the trial court allowed the testimony, finding that this constituted the past recollection recorded exception to hearsay.  Appellant contends that there was no foundation for refreshing his recollection of the events of November 10, 2016, when he had instead been asked about November 15, 2016.

{¶ 84} Pursuant to Evid.R. 803(5), the following does not constitute hearsay:

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown by the testimony of the witness to have been made or adopted when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

{¶ 85} According to this rule, foundational requirements for the use of a past recollection recorded include a showing that

> (1) the witness has insufficient memory to accurately testify to crucial information; (2) that the witness can show through his or her testimony that the past recollection recorded was made or adopted when the matter was fresh in the witness's memory; and (3) that the past recollection recorded correctly reflects the knowledge the witness had at the time it was recorded.

*State v. Bailey*, 8th Dist. Cuyahoga No. 81498, 2003-Ohio-1834, ¶ 32, citing *State v. Baston*, 85 Ohio St.3d 418, 709 N.E.2d 128 (1999).  The staff notes relating to Evid.R. 803(5) specify:

> The rule makes explicit the requirement that the foundation for the introduction of the statement under this exception must be made by testimony of the witness himself.  The assessment of trustworthiness is

thereby focused upon the author and not upon some other person incident to the event.

{¶ 86} In the instant matter, all of the foundational requirements for Evid.R. 803(5) were met.  J.F. testified that he did not recall any of the events that had occurred when he was walking to school and was approached by individuals and pulled into a vehicle and robbed.  He further stated that he did not remember going to the Garfield Heights Police Department with his mother and making a robbery report.  We note that appellant is correct that J.F. was asked about the wrong date; however, it does not appear from the record that J.F.'s lack of memory stemmed simply from counsel for the state's use of the incorrect date.

{¶ 87} When J.F. stated that he did not remember being approached, pulled into a car and robbed, or going downtown to the police station and making a report, it showed that he had insufficient recollection to enable him to testify fully.  J.F. was able to recognize his name and writing on the top of the written statement he gave to police and admitted that it was written right after he was robbed.

{¶ 88} Therefore, because all of the foundational requirements of Evid.R. 803(5) were met, we find the court did not err in allowing the admission of J.F.'s written statement to police.  Appellant's seventh assignment of error is overruled.

## 8. Motion to Dismiss Counsel/Motion to Withdraw

{¶ 89} In his eighth assignment of error, appellant argues that the trial court erred by refusing to dismiss his counsel and/or grant his counsel's motion to withdraw when appellant had an ethical grievance pending against trial counsel.

{¶ 90} One month before trial was set to commence, appellant filed a motion to dismiss counsel, asserting that his trial counsel had not spoken with him for months, pushed continuances that he had not consented to, had not shown appellant the discovery received from the state, and had not been working in his best defense.

{¶ 91} Trial counsel also filed a motion to withdraw, based partly upon appellant's motion to dismiss counsel, and also asserting that appellant had stated to counsel that he had filed a grievance against him. Trial counsel maintained that he was ethically prohibited from continuing to represent appellant.

{¶ 92} Trial counsel stated that he did not feel comfortable representing appellant while a grievance was pending against him but iterated that if he were kept on the case he would "show up and fight for" appellant.

{¶ 93} The trial court held a hearing on the motions where trial counsel stated his belief, based upon conversations with disciplinary counsel, that he could not represent appellant while an ethical grievance was pending. The court asked appellant about the grievance, who confirmed that he had filed one with the bar association based upon ineffective assistance of counsel. Following the hearing, the trial court denied both motions without analysis.

**{¶ 94}** Appellant argues that because a grievance was pending, he and his trial counsel were at odds in an ethical matter, and thus he demonstrated good cause to receive different appointed counsel.

**{¶ 95}** The state, who did not object to the motions and deferred to the court's ruling, asserts that appellant did not demonstrate a breakdown of the attorney-client relationship and that no grievance was ever put on the record. The state further notes that the issue of a bar complaint was never asserted again, despite the fact that the matter was not tried until three months after the court's denial of the motions.

**{¶ 96}** As noted by this court:

> It is well established that an indigent defendant is not entitled to the counsel of his choosing, but rather, only the right to competent, effective representation. *See* [*State v. Murphy*, 91 Ohio St.3d 516, 523, 747 N.E.2d 765 (2001)]. Further, the right to counsel does not guarantee the defendant a meaningful relationship with counsel. *See Morris v. Slappy* (1983), 461 U.S. 1, 13-14, 103 S.Ct. 1610, 75 L.Ed.2d 610; *State v. Pruitt* (1984), 18 Ohio App.3d 50, 57, 480 N.E.2d 499. In order for a criminal defendant to discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to the effective assistance of counsel. *See State v. Coleman* (1988), 37 Ohio St.3d 286, 525 N.E.2d 792, paragraph four of the syllabus. Thus, an indigent defendant is entitled to new counsel "only upon a showing of good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result." *State v. Edsall* (1996), 113 Ohio App.3d 337, 339, 680 N.E.2d 1256; *see, also, State v. Blankenship* (1995), 102 Ohio App.3d 534, 558, 657 N.E.2d 559.

*State v. Stewart*, 2018-Ohio-684, 101 N.E.3d 688, ¶ 13 (8th Dist.), quoting *State v. Hawkins*, 8th Dist. Cuyahoga No. 91930, 2009-Ohio-4368, ¶ 63.

{¶ 97} This court reviews a trial court's decision on a motion to withdraw as counsel for an abuse of discretion. *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶ 135. Similarly, we review a trial court's decision regarding a defendant's request for substitute counsel (or in this case a motion to dismiss counsel) for an abuse of discretion. *Hawkins* at *id.*, citing *Murphy* at *id.*

{¶ 98} In *State v. Deal*, 17 Ohio St.2d 17, 244 N.E.2d 742 (1969), the Supreme Court of Ohio held that when an indigent defendant questions the effectiveness and adequacy of assigned counsel and requests new counsel, the trial court has a duty to inquire into the defendant's complaint and request and to make the inquiry a part of the record. *Id.* at syllabus. Subsequently, in *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, the court explained that "'the limited judicial duty [to inquire into a defendant's complaint about adequacy or effectiveness of counsel] arises only if the allegations are sufficiently specific; vague or general objections do not trigger the duty to investigate further.'" *Id.* at ¶ 68, quoting *State v. Carter*, 128 Ohio App.3d 419, 423, 715 N.E.2d 223 (4th Dist.1998).

{¶ 99} In this case, the trial court did, in fact, conduct an inquiry regarding appellant's concerns during a hearing held on the motions. Specifically, the trial court inquired about the conflicts between appellant and counsel, the communication issues, and appellant's grievance that he said he filed with the bar association.

{¶ 100} After reviewing the record, we find no basis to conclude that the trial court abused its discretion in denying counsel's motions to withdraw or appellant's

motion to dismiss counsel. The record does not reflect a complete breakdown in communications or irreconcilable conflict between appellant and counsel that jeopardized appellant's right to the effective assistance of counsel. Indeed, trial counsel stated that if he were to remain on the case, he would "show up and fight for" appellant.

{¶ 101} We further note that over two months after the motions were filed, trial was set but did not go forward that day due to a conflict with the court's calendar. However, on this day, the parties appeared in court and appellant's trial counsel stated that he had met with appellant in the jail the weekend prior and appellant was "adamant" that he wanted to go forward with trial. There was no further mention of any grievance or breakdown between appellant and his counsel. Trial in this matter did not occur until nearly two months later, and in this time, there was no further mention of any issue with appellant's counsel.

{¶ 102} Accordingly, there is no evidence in the record that the differences, conflict, or communication issues between the two prevented counsel from rendering effective assistance. While appellant's appeal does raise issues of ineffective assistance of counsel, these were found to be without merit and did not relate to the issues raised by appellant in his motion to dismiss.

{¶ 103} Appellant's eighth assignment of error is overruled.

## 9. Cumulative Error

{¶ 104} In his ninth assignment of error, appellant contends that while he maintains that each of his assignments of error warrant reversal, if this court were

to disagree, the cumulative effect of all of the errors deprived him of his right to a fair trial.

{¶ 105} As we have determined that there were no errors committed in the trial of this matter, appellant's final assignment of error is overruled.

## B. State's Cross-Appeal – Jail-Time Credit

{¶ 106} In its sole cross-assignment of error, the state argues that the trial court erred by granting appellant jail-time credit for the time he was serving in prison on an unrelated offense.

{¶ 107} At the time of appellant's trial in this matter, he was serving a five-year prison sentence in Cuyahoga C.P. No. CR-16-611462-A. Accordingly, the state contends that he was not entitled to jail-time credit for the period of time he was serving that sentence, to wit: September 19, 2017, to October 15, 2021 (the date he was sentenced in the case at hand).

{¶ 108} In the court's sentencing entry, it states, "This sentence is ordered to be served concurrently to the defendant's sentences in Case Nos. 605516, 606749 and 611462." Appellant was credited with 1,794 days, which reflected jail-time credit for November 17, 2016, through October 15, 2021.

{¶ 109} "An error in the computation of jail-time credit is subject to review under R.C. 2953.08(G)(2)." *State v. Hearn*, 6th Dist. Erie Nos. E-19-067, E-19-076, E-19-077, and E-19-078, 2021-Ohio-86, ¶ 6. *See also State v. Williams*, 8th Dist. Cuyahoga No. 104155, 2016-Ohio-8049, ¶ 10. "An appellate court may increase, decrease, modify, or vacate and remand a disputed trial court sentence if it clearly

and convincingly is demonstrated that either the record of evidence does not support applicable statutory findings or the sentence is otherwise contrary to law." *Hearn* at ¶ *id.*, citing R.C. 2953.08(G)(2).

{¶ 110} R.C. 2967.191 provides as follows:

The department of rehabilitation and correction shall reduce the prison term of a prisoner, as described in division (B) of this section, by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced, including confinement in lieu of bail while awaiting trial, confinement for examination to determine the prisoner's competence to stand trial or sanity, confinement while awaiting transportation to the place where the prisoner is to serve the prisoner's prison term, as determined by the sentencing court * * *.

{¶ 111} "Although the principle of crediting time served seems fairly simple on its face, in practice, it can be complicated when, inter alia, the defendant is charged with multiple crimes committed at different times, or when the defendant is incarcerated due to a probation violation." *State v. Chafin*, 10th Dist. Franklin No. 06AP-1108, 2007-Ohio-1840, ¶ 9.

{¶ 112} Here, while awaiting disposition on the instant matter, appellant was serving his sentence in Cuyahoga C.P. No. CR-16-611462-A. Appellant argues that, because he was sentenced to a concurrent rather than a consecutive term in the instant case and 611462, he should be entitled to jail-time credit. He argues that, without jail-time credit, he will serve a longer period of incarceration because the sentence would be consecutive rather than concurrent as the trial court intended.

{¶ 113} Pursuant to the provision in R.C. 2967.191, a defendant is entitled to jail-time credit for confinement "for any reason arising out of the offense for which

the prisoner was convicted and sentenced, including confinement in lieu of bail while awaiting trial * * *." R.C. 2967.191. Under the statute, when a defendant is held in jail awaiting trial and disposition of a case (for any reasons arising out of the case, including confinement in lieu of bail), the court is to credit the time the defendant is held in jail toward the sentence the defendant receives in the case.

{¶ 114} When a defendant is being confined due to multiple cases, this court has interpreted R.C. 2967.191 to preclude a claim of jail-time credit "for any period of incarceration that arose from facts which are separate and apart from those on which his current sentence is based." *State v. Maddox*, 8th Dist. Cuyahoga No. 99120, 2013-Ohio-3140, ¶ 41, citing *State v. DeMarco*, 8th Dist. Cuyahoga No. 96605, 2011-Ohio-5187, ¶ 10. There is no jail-time credit pursuant to R.C. 2967.191 when a defendant is imprisoned as a result of another unrelated offense. *Id.* There is no jail-time credit for time served on unrelated offenses, *even if that time served runs concurrently during the pretrial phase of another matter. Id. See also State v. Holley*, 2017-Ohio-1559, 88 N.E.3d 1290, ¶ 15 (8th Dist.); *Williams*, 8th Dist. Cuyahoga No. 104155, 2016-Ohio-8049, at ¶ 15; and *State v. Smiley*, 8th Dist. Cuyahoga No. 99486, 2013-Ohio-4495, ¶ 13.

{¶ 115} Consequently, appellant is not entitled to jail-time credit for the period of pretrial detention in this matter because he was serving a sentence in an unrelated case — even though the trial court made the sentence in the instant case concurrent to the other case.

{¶ 116} Accordingly, the state's sole assignment of error is sustained, and this matter is remanded for recalculation of appellant's jail-time credit without inclusion of time served on unrelated offenses.

### III. Conclusion

{¶ 117} All of appellant's assignments of error are overruled, and the decision of the trial court is affirmed. Appellant's convictions were supported by sufficient evidence and not against the manifest weight of the evidence. Further, the court did not abuse its discretion in the admission of evidence, did not err in denying appellant's motion to dismiss counsel and his trial counsel's motion to withdraw, and appellant did not receive ineffective assistance of counsel.

{¶ 118} In addition, the state's cross-assignment of error in its cross-appeal is sustained. This matter is remanded for recalculation of appellant's jail-time credit without inclusion of time served on unrelated offenses.

{¶ 119} Convictions affirmed; cause remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence and recalculation of jail-time credit.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
CORNELIUS J. O'SULLIVAN, JR., J., CONCUR

KEYWORDS
#110973 - State v. Young

Crim.R. 29; sufficiency of the evidence; manifest weight of the evidence; App.R. 16(A); in-court identification; reliable, independent basis; totality of the circumstances; admission of evidence; Facebook records; authenticity; plain error; failure to object; Evid.R. 901(A); sufficient evidence of authenticity; hearsay; Evid.R. 801; admission by party opponent; Confrontation Clause; ineffective assistance of counsel; irrelevant testimony; abuse of discretion; third-party intimidation of witness; admissible; credibility; Evid.R. 803(5); past recollection recorded; motion to withdraw as counsel; motion to dismiss counsel; pending ethical grievance; jail-time credit; time served on unrelated offense; R.C. 2953.08(G)(2); R.C. 2967.191.

Appellant's convictions were supported by sufficient evidence and not against the manifest weight of the evidence. Further, the court did not abuse its discretion in the admission of evidence, did not err in denying appellant's motion to dismiss counsel and his trial counsel's motion to withdraw, and appellant did not receive ineffective assistance of counsel. In addition, the state's assignment of error in its cross-appeal is sustained. This matter is remanded for recalculation of appellant's jail-time credit without inclusion of time served on unrelated offenses.